```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                        Richmond Virginia


YAMAHA MOTOR CORPORATION,
U.S.A.,

     Plaintiff,

v.                                      Civil Action No. 3:01cv471

JIM'S MOTORCYCLE, INC., d/b/a ATLAS
HONDA/YAMAHA, and DEMERST B. SMIT,
in his Official Capacity as the
Commissioner of the Department
of Motor Vehicles,

     Defendants.
```

**MEMORANDUM OPINION**

This matter is before the Court for decision respecting whether a judgment can be entered in this action, under 42 U.S.C. § 1983, against the defendant, Jim's Motorcycle, Inc., d/b/a Atlas Honda/Yamaha ("Atlas"). The issue has been briefed, and now is ripe for decision.

**BACKGROUND**

Yamaha Motor Corporation, U.S.A. ("Yamaha") is a California corporation that distributes motorcycles and related parts and accessories throughout the United States. Yamaha has approximately 1,200 authorized motorcycle dealers nationwide, twenty-six of which are located in the Commonwealth of Virginia. Defendant, Demerst B.

Smit,[1] is the Commissioner of the Virginia Department of Motor Vehicles (the "Commissioner") and is responsible for administering the Motorcycle Dealer Chapter of the Code of Virginia (Va. Code Ann. §§ 46.2-1993 et seq.). Defendant, Jim's Motorcycle ("Atlas"), does business as Atlas Honda/Yamaha and is an existing dealer of Yamaha and Honda motorcycles in Bristol, Virginia.

In 2000, Yamaha decided to authorize a new motorcycle dealership in Rosedale, Virginia, approximately 26 miles away from Atlas. In October 2000, as allowed by the Code of Virginia § 46.2-1993.67(5), Atlas filed a protest with the DMV against Yamaha's establishment of the Rosedale dealer.

Yamaha sought summary disposition of the protest, and on April 19, 2001, the Hearing Officer appointed to hear the protest issued a one-page order summarily finding that Atlas was entitled to a hearing and stating that such a hearing would be held at a mutually convenient time. On May 8, 2001, after confirming that the Hearing Officer's order represented the position of the Commissioner and was not subject to interlocutory appeal, Yamaha initiated a civil action in this Court challenging the validity of the second paragraph of § 46.2-1993.67(5) (the "Second Paragraph") under the dormant aspect of the Commerce Clause of the United States Constitution. See U.S. Const., art. I, § 8, cl. 3. Shortly

---

[1] During the course of this action, Demerst B. Smit replaced Asbury W. Quillian as the Commissioner and an Order has been entered substituting the name of the new Commissioner.

thereafter, Yamaha agreed voluntarily to dismiss its federal action without prejudice upon learning from the Commissioner that the Hearing Officer did not, in fact, have authority to issue the order under protest and that the Commissioner intended to render a final decision that might narrow the reach of the statute and thereby resolve some, if not all, of the federal constitutional issues. On July 6, 2001, the Commissioner issued his final decision wherein he found that Atlas was entitled to a hearing. One month later, on August 6, 2001, the Commissioner issued an amended decision (Yamaha Ex. 2 (the "Amended Decision")) that reached the same conclusions as the earlier decision, but clarified certain matters.

On July 25, 2001, Yamaha filed a second federal complaint, thereby initiating this action, seeking a declaration that the Second Paragraph violated the dormant Commerce Clause, an injunction prohibiting the Commissioner from enforcing the Second Paragraph, and an award of attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.[2] Soon thereafter, the parties agreed to conduct a summary bench trial based on a stipulated factual record, and the Court conducted that bench trial on April 9, 2002.

---

[2] In October 2001, over two months after initiating the present federal action, Yamaha filed a "provisional" appeal of the Amended Decision in the Circuit Court of Washington County as a means of preserving any state law claims. Before any proceedings were conducted in that court, the parties agreed to stay the appeal pending the resolution of the present federal action.

After conducting the bench trial, the Court concluded that resolution of the constitutional questions depended on the proper interpretation of the Second Paragraph, and, finding no Virginia precedent respecting the proper interpretation, submitted four certified questions to the Supreme Court of Virginia on May 17, 2002. On June 12, 2002, the Supreme Court of Virginia accepted the questions, and, on November 1, 2002, issued an opinion that rephrased the questions, and then answered the rephrased questions. See Yamaha Motor Corp. v. Quillian, 571 S.E.2d 122 (Va. 2002). At the request of the parties, the Court allowed additional discovery to be conducted on the question of the burdens placed on interstate commerce by the Second Paragraph, and conducted evidentiary hearings on February 14, 2003 and March 1, 2003.

In an opinion issued on July 31, 2003, the Court held that the Second Paragraph did not violate the dormant aspect of the Commerce Clause; and, accordingly, entered judgment in favor the Defendants. Yamaha appealed and the Fourth Circuit held that the Second Paragraph violated the dormant Commerce Clause. Yamaha Motor Corp. v. Jim's Motorcycle Inc., 401 F.3d 560 (4th Cir. 2005). The Fourth Circuit therefore reversed and remanded the action "for entry of judgment in favor of Yamaha."

Thereafter, the parties were convened via telephone conference and were asked to confer about, and to submit, a Proposed Judgment Order. On May 4, 2005, Yamaha tendered a Proposed Judgment Order.

4

Atlas promptly objected to the Proposed Judgment Order submitted by Yamaha and asked leave to submit briefs on two issues pertinent to the form of the Judgment Order.  The issues were: (1) that Yamaha has waived its claim against Atlas Under Count II of the Complaint [asserting a claim under 42 U.S.C. § 1983]; and (2) Atlas "may not be found to have been acting under color of state law by filing its protest under the Second Paragraph."[3]  Yamaha and Atlas were directed to file statements of position respecting whether Atlas was amenable to a judgment under 42 U.S.C. § 1983 based on the prior proceedings in the record in this case.  Also, a schedule was established for the submission of a motion for attorneys fees, expenses and costs by Yamaha.

## DISCUSSION

The essence of the issue now disputed by Atlas and Yamaha is whether a judgment can be entered against Atlas under Count II of the Complaint.  It thus is essential to understand the text of the Complaint, the nature of the claims asserted in it, and the record upon which it was resolved.  The Complaint is 19 pages in length. In the first 43 paragraphs (pages 1 through 14), Yamaha outlines

---

[3] Smit filed a pleading (Docket No. 126) asserting that the Order proposed by Yamaha left "open the issue of whether [Yamaha's] suit is an action under 42 U.S.C. § 1983 claim or an action under the doctrine of *Ex Parte* Young, 209 U.S. 123 (1908)."  The purpose of that statement was to preserve the argument that Yamaha's action was not filed under 42 U.S.C. § 1983 and therefore that Yamaha could not secure attorney fees under 42 U.S.C. § 1988.  That issue is the subject of briefing in respect of the Yamaha's motion for attorney fees which is addressed in a separate Memorandum Opinion.

the nature of the statute at issue and the history of the administrative proceedings that were initiated by Atlas when it filed a protest under the Second Paragraph.

In Count I, Yamaha asserts that the Second Paragraph violates the Commerce Clause and explains its theory and requests an injunction that would foreclose enforcement of the Second Paragraph by Smit's predecessor. Atlas is not the subject of Count I.

In Count II, Yamaha alleges that "the Second Paragraph violates section 1983 of the Civil Rights Act [42 U.S.C. § 1983]. Complaint, p. 17. Count II consists of five paragraphs. Atlas is mentioned in only one of them and there Yamaha alleges that:

> Atlas has invoked the Second Paragraph, and the Commissioner's authority thereunder, in an unlawful attempt to impede Yamaha from engaging in interstate commerce. Atlas is a person acting under the color of state law within the meaning of 42 U.S.C. § 1983.

Complaint, p. 18, ¶ 58. In the concluding paragraph of Count II, Yamaha seeks "protection and vindication of its federal rights under 42 U.S.C. § 1983, including a decree that the Second Paragraph is void and unenforceable under section 1983." Yamaha also claims entitlement to its attorneys fees. In the Prayer for Relief section of the Complaint, Yamaha seeks a decree that the Second Paragraph is unconstitutional, an injunction enjoining the Commissioner from enforcing the Second Paragraph, enjoining Atlas from protesting under the Second Paragraph and a request for Yamaha's attorneys fees in defending itself against "the

Commissioner's and Atlas' unlawful enforcement of the Second Paragraph." Complaint, p. 19, ¶ E.

Shorn of arguments at its periphery, the issue presented by Atlas is that Atlas has not been shown to be a state actor and therefore cannot be liable under Section 1983. Atlas also asserts that Yamaha has waived its claim that Atlas argued under color of state law by not proving the issue. In reality, that contention is simply the converse of Atlas' principal theory.

**A. Whether Atlas Acted Under Color of State Law**

**1. Applicable Law**

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

It now is settled that private entities and individuals can be held accountable, under certain circumstances, for having acted under color of state law, and, therefore, can be subject to liability under Section 1983. 1 Martin A. Schwartz, Section 1983 Litigation §5.10 (4th ed. 2004). In <u>Lugar v. Edmonson Oil, Co.</u>, 457 U.S. 922, 935 (1982), the Supreme Court of the United States

held that conduct constituting state action under the Fourteenth Amendment also constitutes action under color of state law within the meaning of Section 1983. Following <u>Lugar</u>, courts have tended to treat the color-of-state law and state action requirements as one in the same or to address only the state action issue because a finding of state action necessitates of finding of action under color of state law.

In <u>Lugar</u>, a debtor sued a corporate creditor and its president, alleging that by attaching his property before judgment, as allowed by Virginia's prejudgment attachment statute, the defendants had acted jointly with the state to deprive him of his property without due process of law. The Supreme Court agreed and found that state action was present because the private parties had jointly participated with state officials in the seizure of the property. <u>Lugar</u>, 457 U.S. at 941.

The Court set forth a two-part test for determining whether the actions of a private party may be "fairly attributable to the state," thus making the defendant a "state actor" for purposes of Section 1983. First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or a person for whom the State actor is responsible." <u>Id.</u> at 937. As for the second requirement:

> [T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be <u>because</u> he <u>is a state official</u>, because he has <u>acted together</u>

8

> with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

Id. (emphasis added).

In Lugar, the Court noted that "the procedural scheme created by the statute is obviously the product of state action," id. at 941, and then added that "we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." Id. However, the Court was careful to limit its holding to the particular facts of Lugar and explained that:

> [W]e do not hold today that 'a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action under color of law.' The holding today . . . is limited to the particular context of prejudgment attachment.

Id. at 939 n.21. At the end of its opinion, the Court also addressed a concern raised by Justice Powell in dissent:

> Justice Powell is concerned that private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconstitutional, for the consequences of their actions. In our view, however, this problem should be dealt with not by changing

9

> the character of the cause of action but by establishing an affirmative defense.

Id. at 942 n.23. The limitation of the holding to the prejudgment attachment context followed by the broad statement that an innocent private actor may avoid liability by pleading good faith has led to confusion about the potential for extending the holding in Lugar to other contexts.

However, in Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214 (4th Cir. 1993), the Fourth Circuit articulated four circumstances under which a private party can be deemed a state actor. The Court of Appeals explained that:

> A private party can be deemed a state actor in four contexts: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen. <u>If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state</u>.

Andrews, 998 F.2d 214 (emphasis added). The parties agree that the first three circumstances are not applicable in this action. However, the fourth one ("when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen") is said by Yamaha to be the basis on which Atlas

10

should be held liable under Section 1983.[4]  In Andrews, the Court of Appeals further explained that the:

> fourth category of state action limits the actions that a state can take in enforcing the rights of private individuals.  When the state commits an unconstitutional act in the course of enforcing private rights, the private entity may be held accountable for invoking the state's authority."

Andrews, 993 F.2d at 219 (citing Lugar as an example of such a situation.)

In Deal v. Newport Datsun Ltd., 706 F.2d 141 (4th Cir. 1983), tenants brought a Section 1983 action seeking an injunction against a landlord who had instituted an eviction proceeding under state law.  The Fourth Circuit dismissed the tenant's reliance on Lugar, noting that it was "limited to prejudgment attachment situations," and finding that "[t]here was no such attachment here."  Id. at 141.

In a later decision, the Fourth Circuit noted that the Supreme Court "has articulated a number of different factors or tests in different contexts, and the facts which would convert the private party into a state actor vary with the circumstances of the case."

---

[4] Section 1983, of course, creates no substantive rights. Rather, it is procedural vehicle for redressing violations of federal constitutional or statutory rights.  Albright v. Oliver, 510 U.S. 266, 271 (1994); Westmoreland v. Brown, 883 F. Supp. 67, 71 (E.D. Va. 1995).  But, this procedural vehicle is not available unless the "under color of state law requirement" contained in the statute is satisfied.

11

Goldstein v. The Chestnut Ridge Volunteer Fire Dept., 218 F.3d 337, 343 (4th Cir. 2000) (quoting Lugar, 457 U.S. at 939).

In Goldstein, the Fourth Circuit also explained that to make a determination respecting state action for any particular set of facts "requires an examination of all the relevant circumstances, in an attempt to evaluate the degree of the Government's participation in the private party's activities." Id. That, of course, underscores the point made by the Supreme Court that it is an "impossible task" to "fashion and apply a precise formula" for determining when state action is present and that [o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961).

The foregoing principles guide the resolution of the present dispute respecting the amenability of Atlas to entry of judgment under Count II.

### 2. Application of the Legal Principles to this Record

The undisputed record here is that Atlas initiated a protest under the Second Paragraph. Smit's predecessor processed the application and made a number of decisions in so doing. There is no indication in the record that Atlas was involved in the administrative decisional process other than as a litigant which initiated the process and then participated in it by filing briefs and presenting evidence in accord with schedules set by the

12

administrative officials.  Yamaha twice has named Atlas and Smit's as predecessor defendants in legal actions that have placed the Commissioner and Atlas in the position of defending the constitutionality of the Second Paragraph.  Although Atlas prevailed in certain aspects of the state administrative proceeding, there is nothing in this record to suggest that Atlas engaged in the private use of the Second Paragraph with the help of the Commissioner.  Nor does it appear of record that the state provided any assistance or benefits to Atlas in its participation of the administrative process under the Second Paragraph.  See Goldstein v. The Chestnut Ridge Volunteer Fire Dept., 218 F.3d 337, 342-43 (4th Cir. 2000).

As the plaintiff, Yamaha is obligated to prove that Atlas acted under color of state law because that is an element of a Section 1983 claim.  Clark v. Link, 855 F.2d 156, 161 (4th Cir. 1988).  Yamaha simply did not prove that Atlas and the state acted jointly or engaged in conspiratorial conduct or, in any other way, comported themselves in such a way as to make the state's action in processing Atlas' protest under the Second Paragraph conduct that is fairly attributable to the state.

Yamaha has cited no decision which holds that one becomes a state actor or acts under color of state law by merely instituting an administrative proceeding of the sort here at issue under a state statute that authorizes such a proceeding and that does not

13

result in the deprivation of a property interest. Nor has the Court found any such authority. Instead, Yamaha argues that this action is very much like <u>Sable Communications of California Inc. v. Pacific Telephone and Telegraph</u>, 890 F.2d 184 (9th Cir. 1989). In <u>Sable</u>, a company that supplied sexually explicit conversation by telephone challenged a rule of the California Public Utilities Commission, which authorized disconnection of the company's sexually explicit messages. <u>Id.</u> at 185. The rule at issue required a communications utility to disconnect service to any customer upon receipt of a finding of probable cause signed by a magistrate that the customer was using the service for illegal activity. <u>Id.</u>

Pacific Bell wrote a letter to Sable informing the company that service would be disconnected pursuant to the rule and Pacific Bell's own internal rules. In response, Sable filed suit seeking declaratory and injunctive relief under Section 1983. Pacific Bell also "adopted a written policy of lobbying law enforcement agents to prosecute Sable under state obscenity laws to clear the way for a finding by a magistrate that probable cause exists that the telephone is being used for illegal purposes." <u>Id.</u> at 187.

Pacific Bell argued that it did not act under color of state law in seeking to implement the rule. Citing <u>Lugar</u>, the Ninth Circuit applied the joint participation doctrine, noting that "joint action requires a substantial degree of cooperative action."

14

Id. at 189. The court explained that Pacific Bell "sought to invoke state aid to take advantage of the state-created procedure . . . by actively petitioning government officials to enforce [the section of the California Penal Code] for the express purpose of obtaining findings of probable cause that would then require Pacific Bell to disconnect Sable." Id. The court also found it significant that Pacific Bell's "repeatedly requesting law enforcement agents to undertake action that would trigger a procedure that would violate Sable's first amendment rights satisfies the joint participation requirement." Id. The court concluded that:

> The state's participation in the intrusion in this case is manifested in the CPUC's promulgation of Rule 31, which 'create[] the legal framework governing the conduct' and 'delegate[d the state's] authority' to disconnect Sable to Pacific Bell, thereby provid[ing] a mantle of authority that enhanced the power of the harm-causing individual actor."

Id.

The Ninth Circuit clearly extended Lugar beyond its limited holding. The Fourth Circuit, however, has not adopted the reasoning of Sable and, it appears that Sable and remains limited to the Ninth Circuit because it has been adopted by no other circuit.

To hold Atlas accountable for acting under color of state law on the facts in this record would be to expand Section 1983 well

15

beyond where Lugar and the decisions of the Fourth Circuit have taken it. If that result is to obtain on a record such as this, it will have to be accomplished by the Court of Appeals or the Supreme Court.

**CONCLUSION**

For the reasons set forth above, the Court finds that, on this record, Atlas is not amenable to judgment under Count II because it has not been shown to have acted under color of state law within the meaning of Section 1983. Accordingly, no judgment will be entered against Atlas and the action against Atlas will be dismissed.[5]

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                                    /s/
                                         Robert E. Payne
                                   United States District Judge

Richmond, Virginia
Date: August 9, 2005

---

[5] This resolution makes it unnecessary to consider Atlas' "waiver argument." In its Brief in Support of Its Statement of Position, Atlas made a passing argument that it is entitled to attorneys fees for having to dispute the form of the judgment. That single sentence does not put that dubious proposition before the Court.