**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

YAMAHA MOTOR CORPORATION, U.S.A.,

    Plaintiff,

v.                                                      Civil Action No. 3:01cv471

JIM'S MOTORCYCLE, INC., d/b/a ATLAS
HONDA/YAMAHA, and DEMERST B. SMIT,
in his Official Capacity as the
Commissioner of the Department
of Motor Vehicles,

    Defendants.

**MEMORANDUM OPINION**

Yamaha Motor Corporation, U.S.A. ("Yamaha") is a California corporation that distributes motorcycles and related parts and accessories throughout the United States. Yamaha has approximately 1,200 authorized motorcycle dealers nationwide, twenty-six of which are located in the Commonwealth of Virginia. Defendant, Demerst B. Smit,[1] is the Commissioner of the Virginia Department of Motor Vehicles (the "Commissioner") and is responsible for administering the Motorcycle Dealer Chapter of the Code of Virginia (Va. Code Ann. §§ 46.2-1993 et seq.). Defendant, Jim's Motorcycle ("Atlas"), does business as Atlas Honda/Yamaha and is an existing dealer of Yamaha and Honda motorcycles in Bristol, Virginia.

In this action, Yamaha sought to have declared a Virginia

---

[1] During the course of this action, Demerst B. Smit replaced Asbury W. Quillian as the Commissioner and an Order has been entered substituting the name of the new Commissioner.

statute unconstitutional. Specifically, Yamaha asserted that Section 46.2-1993.67(5) (the "Second Paragraph") of the Virginia Code violated the dormant aspect of the Commerce Clause of the United States Constitution. See U.S. Const., art. I, § 8, cl. 3. In its Complaint, Yamaha asserted two counts, one of which was pressed pursuant to 42 U.S.C. § 1983. Yamaha ultimately prevailed on its challenge to the Second Paragraph when the United States Court of Appeals for the Fourth Circuit held that the Second Paragraph violated the dormant Commerce Clause. Yamaha Motor Corp. U.S.A. v. Smit, 401 F.3d 560 (4th Cir. 2005). The case was remanded for further proceedings consistent with the appellate decision, judgment was entered against Smit on both counts of the Complaint, including the claim under Section 1983.[2] The matter is now before the Court on Yamaha's petition, under 42 U.S.C. § 1988, for an award of attorneys fees and expenses as a prevailing party against Smit.[3]

**I.**

This action was preceded by an administrative proceeding under the Second Paragraph and an aborted federal action. Also, the

---

[2] By separate Memorandum Opinion and Order, judgment was entered in favor of Atlas and the action against it was dismissed.

[3] Yamaha seeks an award of fees and expenses under § 1988 against both Smit and Atlas. For reasons set forth in a separate Memorandum Opinion, Yamaha did not prevail on its claim against Atlas under § 1983, and, therefore, Atlas is not liable for an award of fees and expenses under § 1988.

action involved litigation on an issue certified by this Court to the Supreme Court of Virginia.  Thereafter, there was a bench trial on the merits in this Court followed by an appeal to the Fourth Circuit.

Yamaha's fee petition does not encompass the administrative proceeding or the short-lived first federal action.  The requested fees in this action and its appeal are $799,090.08 and the requested litigation expenses and taxable costs are $75,743.16.

In this action, Yamaha was represented by Willkie Farr & Gallagher, LLP, ("WFG"), a Washington D.C. based law firm, and by McGuireWoods ("MW"), a law firm based in Richmond, Virginia.  WFG has represented Yamaha in a number of matters for approximately twenty years.  David P. Murray, the WFG partner who led the representation of Yamaha in this action, has represented the company in a number of commercial and administrative matters for several years.  MW served as local counsel for Yamaha and, in that capacity, performed a variety of services.

Smit has objected to Yamaha's fee request for several reasons.[4]  Each will be considered in turn.

## II.

As a threshold matter, Smit contends that, for two reasons, fees are not awardable at all.  Neither contention has merit.

---

[4] Smit has not objected to the requested litigation expenses and taxable costs ($75,743.16).

First, Smith asserts that, as a matter of law, this action cannot be characterized properly as one brought under Section 1983. Instead, says Smit, it should be considered as an action under Ex parte Young, 209 U.S. 123 (1908), as to which no award of fees is permitted, under Section 1988 or otherwise. This argument is based on Smit's contention that, in Gonzaga University v. Doe, 536 U.S. 273 (2002), the Supreme Court of the United States, sub silento, overruled its decision in Dennis v. Higgins, 498 U.S. 439 (1991), wherein the Court held that violations of the dormant Commerce Clause are actionable under Section 1983. Considering that Gonzaga does not overrule Higgins and that the Fourth Circuit has applied Higgins in reaching the same result,[5] Smit acknowledges that this Court cannot sustain his argument. The argument is asserted to preserve it for appeal.

Second, Smit argues that principles of dual sovereignty foreclose an award of attorney fees against the Commonwealth. Smit also makes this argument to preserve the point for appeal for it is foreclosed by the decision in Hensley v. Eckerhart, 461 U.S. 424, 429 (1983), which holds that attorneys fees may be awarded against the states under Section 1988.

---

[5] See Medigen of Ky., Inc. v. Public Serv. Comm'n of W. Va., 985 F.2d 164, 167, n.3 (4th Cir. 1993); Environmental Tech. Council v. South Carolina, No. 99-5672, 2000 WL 709573, at *1 (4th Cir. June 2, 2000).

4

Hence, neither of these preliminary points are supportable under current law. Accordingly, they are rejected.

### III.

Smit also objects to the reasonableness of the fee request for several reasons, only one of which has merit. The objections to reasonableness are measured under settled legal principles which will be reviewed briefly.

**A.  The Applicable Law**

In actions brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fees as part of the costs." 42 U.S.C. § 1988(b). Further, the Supreme Court has instructed that: "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, p. 4 (1976), 1976 U.S.C.C.A.N., p. 5912 (internal quotation marks and citations omitted)); accord Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). Of course, the burden of establishing entitlement to, and the reasonableness of, a fee award is on the fee applicant. See Hensley v. Eckerhart, 461 U.S. at 437.

In Hensley, the Supreme Court held that: "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

5

multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. at 433. From that initial fee calculation, it is necessary to exclude hours that were not "reasonably expended." Id. at 434. That requirement is simply the exercise of discretionary billing judgment by which "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id.

The product obtained by multiplying reasonable hours by a reasonable rate produces a lodestar figure which "is presumed to be the reasonable fee contemplated by § 1988." City of Riverside v. Rivera, 477 U.S. 561, 568 (1986). Of course, "[t]here remain other considerations that may lead the district court to adjust the fee upwardly, including the important factor of the 'results obtained.'" Hensley v. Eckerhart, 461 U.S. at 434 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) and Copeland v. Marshall, 641 F.2d 880, 890 (D.C. Cir. 1980) (en banc)). There are twelve so-called Johnson factors. They are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience,

6

> reputation and the ability of the attorney;
> (10) the "undesirability" of the case; (11)
> the nature and length of the professional
> relationship with the client; and (12) awards
> in similar cases.

As the Supreme Court made clear in Hensley, "many of these [Johnson] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate." Hensley v. Eckerhart, 461 U.S. at 434 n.9.

With these principles in mind, it is appropriate now to consider Smit's objections to Yamaha's fee request.

**B.  The Objection to the Hourly Rates Charged by WFG**

In this action, the principal challenge to the reasonableness of the fee request is Smit's contention that the rates charged by Yamaha's counsel, WFG, are excessive.[6] According to Smit, the fee should be calculated using hourly rates charged in Richmond, Virginia, not those charged in Washington, D.C.

In Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994), the Fourth Circuit articulated the general principle that the requirement of a reasonable fee ordinarily is "met by compensating attorneys at the 'prevailing market rate in the relevant community.'" (quoting Blum v. Stenson, 465 U.S. 886,

---

[6] That contention implicates Johnson factors 5, (the customary fee), 9 (the experience, reputation and ability of the attorneys), and 11 (the nature and length of the professional relationship with the client). It also implicates Johnson factor 12 (awards in similar cases), but Yamaha has placed nothing in the record that would permit application of that factor.

895 (1984)). The relevant market for determining the prevailing rate is "ordinarily the community in which the court where the action prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d at 175 (citing Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)).[7]

However, like most circuits, the Fourth Circuit recognizes that it is appropriate on occasions, and with the requisite proof, to authorize the recovery of attorney's fees at rates higher than those charged in the local market where counsel for the prevailing party is not from the district in which the action is tried. Indeed, in Rum Creek, the Fourth Circuit approved payment of prevailing party fees for lawyers from Richmond, Virginia in a case that was tried in the Southern District of West Virginia. There, our Court of Appeals articulated what also is a generally accepted principle when it held that:

> Rates charged by attorneys in other cities [other than the forum city], however, may be considered when 'the complexity and the specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice.

---

[7] This precept--that the relevant market is the one in which the presiding district court sits--is generally followed. See Davis v. Mason County, 926 F.3d 1473, 1488 (9th Cir. 1991); Ackerly Communications v. City of Somerville, 901 F.2d 170, 172 (1st Cir. 1990); Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2nd Cir. 1983); Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982); Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 768-69 (7th Cir. 1982); Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir. 1982).

<u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d at 179 (quoting <u>Nat'l Wildlife Fed'n v. Hanson</u>, 859 F.2d at 317). Obviously, the test articulated by the Court of Appeals imposes, on the fee applicant, the burden to show that a particular case for which out-of-locality rates are sought was one of such complexity and specialized nature that no attorney with the required skills was available locally and that the fee applicant was reasonable in choosing an attorney from out of the forum.

Smit contends that Yamaha has not met the first part of the <u>Rum Creek</u> formulation. And, a review of the record discloses that Smit is correct.

A review of decisions involving the dormant Commerce Clause demonstrates that such cases are often complex. And this one, while not inordinately complex, was far from simple, a circumstance obvious at the time a decision to retain counsel was made and one that was demonstrated throughout the course of the case. In sum, it is fair to describe this action as involving complex commercial and constitutional litigation.

However, Yamaha has not demonstrated that it was necessary to retain counsel specialized in dormant Commerce Clause litigation to represent it in this case. In fact, Yamaha did not retain the services of a lawyer who specialized in such litigation or who had exceptional knowledge in the intricacies of dormant Commerce Clause litigation. Instead, it retained Mr. Murray, an undoubtedly

9

competent lawyer in the field of complex commercial litigation, who claims no experience involving the dormant Commerce Clause and the constitutional issues presented thereby. Thus, Yamaha has failed to meet the first requisite of the <u>Rum Creek</u> test: the existence of complex litigation requiring specialized legal skills in the area of the case and the retention of specialized counsel for that reason.[8]

Nor has Yamaha met the other aspect of the first component of the <u>Rum Creek</u> test: that no lawyer in the Richmond area possessed the skills that were necessary to represent Yamaha adequately in this litigation. The showing made by Yamaha simply does not address this point at all. Moreover, Yamaha could not make this showing. For example, its local counsel, MW, has a number of lawyers, including the ones who represented Yamaha as local counsel in this action, who are distinguished and able lawyers who practice complex commercial litigation that include sophisticated constitutional issues. And, there are a number of other firms in Richmond that also have that capability.

---

[8] WFG has represented Yamaha in various matters for several matters over a period of twenty years and David P. Murray, a partner in WFG, has represented Yamaha in a number of commercial and administrative cases. According to the affidavit of Yamaha's general counsel, Mr. Murray was selected to represent Yamaha in this case because of that connection and his abilities, as demonstrated in previous successful representations. Nothing in the record reflects that Mr. Murray had any previous experience in litigating constitutional issues arising under the dormant Commerce Clause, nor that Mr. Murray has experience in litigating cases involving the dormant Commerce Clause.

Accordingly, Yamaha has failed to meet the first facet of the Rum Creek test. Under that circumstance, and although Yamaha is certainly free to retain counsel of its choice to represent it, Yamaha may not secure payment of the higher rates charged by Washington, D.C. counsel under the law applicable to the award of attorney's fees under Section 1988.[9]

The appropriate hourly rate to be used in effectuating the reasonable rate calculation to be made here is the rate for similar services by similarly qualified lawyers in the Richmond, Virginia market. Smit argues that an average rate based on the affidavit of a Richmond lawyer should be used in calculating the fees due WFG. However, the record contains a far better measuring device: the rates charged by Yamaha's local counsel, MW. Smit does not contest the reasonableness of the rates charged by MW. Under the circumstances of this case, wherein it appears from examining the billing records, that MW performed substantive analysis and research on this matter and that the lead lawyer for MW is a skilled commercial litigator of approximately the same vintage and experienced as Mr. Murray, it is appropriate that the proper rate to be charged for Mr. Murray's services would be the same rate that was paid by Yamaha for Mr. Boland's services. In like fashion,

---

[9] Because the Rum Creek formulation requires an examination of fees in the Richmond area, the forum location, there is no need to assess the lengthy arguments made by the parties respecting the so-called Laffey matrix or the amended Laffey matrix.

11

there appears to be, in the billing records of MW, significant data to permit the conclusion that the rates charged for the services of MW associates (of similar experience and vintage to those at WFG) should be used to calculate the fee award. The same principle applies to define the appropriate level for hourly rates for legal assistants.

### C. Smit's Other Objections

Smit objects to the award of any fees after the end of Virginia's legislative session in 2003 because, in his view, Yamaha opposed a proposed amendment to the Second Paragraph which, if adopted, would, according to Smit, likely have resulted in a termination of the litigation in March 2003. It is true, as Smit asserts, that counsel for Yamaha appeared before the Transportation Committee of the Virginia House of Delegates in February 2003 and testified about the status of this action. It does not appear to be the case, however, that counsel for Yamaha actually opposed the amendment or expressed a substantive opinion about it. Instead, he was called upon to explain the status of this action.

As shown by the affidavit of Reginald M. Jones, Esq., a prominent lawyer in Virginia whose practice has included the representation of clients before the Virginia General Assembly for more than thirty years, it is doubtful whether the proposed amendment would have resolved the litigation. And, as Mr. Jones'

12

affidavit also establishes, the proposed amendment was tabled pursuant to a general practice of long standing in the Virginia General Assembly not to amend statutes while litigation about them is pending. On this record, it cannot be concluded that the limited appearance of Yamaha's counsel before a committee of the Virginia General Assembly was responsible for the continuation of this action.

Smit has made several other objections opposing the compensation of certain lawyers employed by WFG. An examination of the record makes obvious that, in each instance, Smit's opposition is based on an erroneous predicate. The reply of Yamaha effectively forecloses each of the challenges made by Smit as to the propriety of billing for the services of the other WFG lawyers.[10]

**CONCLUSION**

For the reasons set forth above, Yamaha is entitled to an award of reasonable attorney fees for having prevailed in this litigation.[11] There is no objection by Smit to the time devoted to the litigation. Accordingly, a reasonable fee will be determined by multiplying the hours charged by the WFG lawyers by

---

[10] The hourly rates for those lawyers will be the rates charged by the lawyers at MW of like experience and qualifications at the time the services were rendered by the WFG lawyers.

[11] Smit's opposition brief includes a fairly lengthy argument that there should be no premium awarded for favorable results in this case. Yamaha sought no such adjustment, and that issue is moot.

13

the rates charged by MW for similarly situated lawyers and legal assistants at the time the services were provided. A recalculation of the fees shall be submitted within fifteen (15) days of the date of this Memorandum Opinion, August 24, 2005.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record by facsimile and regular mail.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: August 9, 2005