IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

YAMAHA MOTOR CORPORATION, U.S.A.,

    Plaintiff,

v.                                          Civil Action No. 3:01cv471

JIM'S MOTORCYCLE, INC., d/b/a ATLAS
HONDA/YAMAHA, and DEMERST B. SMIT,
in his Official Capacity as the
Commissioner of the Department
of Motor Vehicles,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the court on the Supplemental Motion Of Yamaha Motor Corporation, U.S.A. For Attorney's Fees, Litigation Expenses, And Costs Pursuant To 42 U.S.C. § 1988 (Docket No. 153).

**BACKGROUND**

Yamaha Motor Corporation, U.S.A. ("Yamaha") brought this action pursuant to 42 U.S.C. § 1988 against Demerst B. Smit, Commissioner of the Virginia Department of Motor Vehicles ("Smit") and Jim's Motorcycle, Inc. d/b/a Atlas Honda/Yamaha ("Atlas"). Yamaha sought a declaration that Va. Code § 46.2-1993.67(5) (the "Second Paragraph") violated the so-called "dormant" Commerce Clause of the United States Constitution. Wilkie Farr & Gallagher LLP ("WF&G") and McGuireWoods LLP ("MW") served as lead and local counsel, respectively, for Yamaha. Reversing a decision by this Court, the United States Court of Appeals for the Fourth Circuit

held that the Second Paragraph was unconstitutional and ordered that judgment be entered in favor of Yamaha. Smit filed a petition for writ of certiorari to the Supreme Court of the United States and Atlas filed a cross-petition for writ of certiorari. Yamaha opposed Smit's petition and waived its right to respond to Atlas' cross-petition. On October 11, 2005, the Supreme Court denied both the petition and the cross-petition. While the appeal was pending before the Supreme Court of the United States, this Court awarded attorney's fees and costs to Yamaha against Smit based on the fact that Yamaha had prevailed in the declaratory judgment action against Smit. On September 23, 2005, the Court granted a revised fee request that was submitted pursuant to the Order entered on August 9, 2005. The amount of fees awarded was $731,597.06 and expenses[1] were awarded in the amount of $75,743.16, a total award of $807,340.22.

In its supplemental petition, Yamaha seeks additional fees and costs that it incurred in: (1) defending its initial fee petition; and (2) opposing the petition for a writ of certiorari filed by Smit in the Supreme Court. Yamaha's supplemental petition seeks fees for WF&G's services in the amount of $46,957.00 and for MW's services in the amount of $13,501.50. The total fees sought in the

---

[1] Henceforth, the term "costs" shall include expenses and costs.

supplemental petition are $60,458.50. The costs sought in the supplemental fee petition are $8,513.08.

## DISCUSSION

### A. Fees And Costs For Opposing Smit's Petition For A Writ Of Certiorari

Smit agrees that Yamaha is entitled to reasonable attorney's fees and costs incurred in opposing the petition for a writ of certiorari filed by Smit. However, Smit raises objections to fees which it considers to be related to Yamaha's opposition to Atlas' cross-petition for a writ of certiorari and to charges as to which there is assertedly no legal description for the services rendered.

Yamaha now has made clear that it is not seeking attorney's fees or costs related to Atlas' cross-petition and that Smit is in error in his contrary assessment of Yamaha's supplemental petition position. Also, subsequent filings by Yamaha have identified three time entries that were inadvertently included in its supplemental fee petition and that Yamaha agrees should be deleted from its fee claim. Those three entries are for fees in the amount of $229.50, all of which appear to attributable to issues involving Atlas' cross-petition. Thus, of Yamaha's total claim for fees, it appears that the fees for opposing Smit's petition for writ of certiorari amount to $29,910.46. Yamaha is entitled to an award in that amount.

### B. Fees And Costs For Defending The Initial Application

After deducting the inadvertent claim for $229.50, there is a revised total claim of $60,229.00. Deducting from that sum the claim that is attributable to opposing Smit's certiorari petition ($29,910.46), there remains a claim for $40,318.54 that is attributable to the defense of the initial fee petition.

Smit seeks a fee reduction of $28,114.55 in respect of fees for the initial fee request and denial of the claim for costs entirely because they assertedly are unclear.

Smit's opposition to the supplemental petition is somewhat confusing and speaks largely in pejorative generalizations. To make matters worse, Smit tries to make his case by pointing to examples rather than to specific aspects of the claim and by making assumptions that are hard to follow. Read generously, Smit's position is that, because WF&G's hourly rates were reduced, the cost of defending initial fee application should be reduced by $28,114.55.

However, Smit does not explain how the reduction he now seeks correlates with the previously ordered reduction of WF&G's hourly rates. Moreover, Smit's opposition to Yamaha's supplemental petition seeking fees for defending the initial fee petition overlooks certain basic aspects of the attack that Smit made on the initial fee petition.

To begin, Smit mounted a multi-faceted attack on the initial application which required Yamaha to defend contentions by Smit that: (1) there should be no fee awarded in the case at all; (2) this action was not even properly brought under 42 U.S.C. § 1988; and (3) "principles of dual sovereignty" precluded any award of attorney's fees. Those arguments were rejected. In addition, Smit presented a broad array of objections challenging the legal qualifications of lawyers, questioning whether certain lawyers were admitted to the bar, and challenging whether the case responsibilities were allocated based on appropriate experience and qualifications. Yamaha was successful in opposing each of those contentions. Further, Smit argued that Yamaha actually had aborted legislative solution to the statute, and it was necessary for Yamaha to meet that contention by argument and evidence. The contention ultimately was rejected by the Court.

As Smit correctly observes, his objection to the use of WF&G's customary hourly rates was sustained. However, that was but a small part of the briefing on the initial fee application. And, it is true that, in connection with its opposition to Smit's position, Yamaha offered evidence about the "so-called" _Laffey_ matrix of rates in Washington, D.C. and about adjustments to that matrix. However, that evidence was offered as a part of, but certainly not all of, the evidence that the rates sought by WF&G were reasonable.

5

Viewing the dispute about the initial fee petition in its entirety and considering the totality of the circumstances, the Court finds that the amount of time and effort devoted to the defense of Yamaha's initial fee petition was reasonable and was reasonably necessary, notwithstanding that the Court required WF&G to adjust its rates downward. Moreover, with that one exception, Smit did not succeed on any of the numerous challenges presented to the original Yamaha fee award. Accordingly, the Court finds that it is appropriate to reject the downward adjustments sought by Smit in his opposition to the supplemental fee petition.[2]

And, contrary to Smit's generalized assertion, the costs claimed by Yamaha are presented with sufficient clarity to permit a determination that they are reasonable in amount and were reasonably incurred.

## C. Interest

From statements in the briefs, it appears that Smit (or, more precisely, Virginia's Department of Risk Management) has opposed the payment of interest on the attorney's fees and costs. Interest on the award, however, is permitted by statute. Spell v. McDaniel, 616 F. Supp. 1069, 1115 (E.D.N.C. 1985), vacated in part on other

---

[2] Smit also opposes the payment of expert fees for Dr. Kavanaugh who helped present evidence on the Laffey issue. Yamaha did not seek reimbursement for that expense. And, the objection to computerized research, apparently attributable to the entries called "data acquisition" (in the amount of $1,508.91 and $948.76) are overruled because that was for work that was compensable.

grounds, 824 F.2d 1380 (4th Cir. 1987). As explained by the district court in Spell v. McDaniel:

> 28 U.S.C. § 1961 provides that interest, running from the date of entry of the judgment, 'shall be allowed' on any 'money judgment' recovered in a civil case in a federal district court. Most courts that have considered the question have ruled that § 1961 is applicable to § 1988 attorney's fees awards and pursuant thereto interest accrues as a matter of course from the date of entry of the judgment awarding fees.

Id. Accord, McKnight v. Circuit City Stores, Inc., 14 Fed. Appx. 147, 155-56 (4th Cir. 2001); Shockley v. Newport News, No. 90-377, 1991 U.S. Dist. LEXIS 20503, at *20 (E.D. Va. Dec. 18, 1991), rev'd on other grounds, 997 F.2d 18 (4th Cir. 1993). See also Associated Gen. Contractors of Ohio, Inc. V. Drabik, 250 F.3d 482, 485 (6th Cir. 2001); Miller v. Artistic Cleaners, 153 F.3d 781, 785 (7th Cir. 1998).

It is troubling that the Division of Risk Management of the Commonwealth of Virginia has taken the position that, without a separate court order, it will not recognize what the statute and the decisional law clearly provide. To assure compliance with the law, an order will be issued specifying that interest on the award of fees and costs ($807,340.22) shall accrue from September 23, 2005 at the rate of 3.82% per annum until that amount is paid (as to the initial fee award)[3] and interest shall accrue on the award

---

[3] If the initial award already has been paid, interest shall be due from September 23, 2005 at 3.82% per annum until the date of payment.

under the supplemental petition at the federal judgment rate of 5.00% per annum until paid.

## CONCLUSION

For the foregoing reasons, the Supplemental Motion Of Yamaha Motor Corporation, U.S.A. For Attorney's Fees, Litigation Expenses, And Costs Pursuant To 42 U.S.C. § 1988 (Docket No. 153) is granted and Yamaha will be awarded attorneys fees and costs against Smit in the amount of $68,971.58 with interest accruing at the rate of 5.00% per annum from November 7, 2006 until paid, and Yamaha will be awarded interest on the initial award of $807,340.22 at the rate of 3.82% per annum from September 23, 2005 until paid.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: November 7, 2006